UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN D. JACKSON JR.,<br>Plaintiff,<br>-v.-<br>NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),<br>Defendant. | 25 Civ. 4368 (KPF)<br>**AMENDED OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

After being terminated by his former employer, National Railroad Passenger Corporation ("Amtrak" or "Defendant"), *pro se* Plaintiff Kevin D. Jackson Jr. brought this employment discrimination lawsuit alleging that Defendant had discriminated against him on the basis of sex, race, and color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and analogous state and local laws; and on the basis of his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (the "ADA"), and analogous state and local laws. Before the Court is Defendant's motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the remainder of this Opinion, the Court grants Defendant's motion.

## BACKGROUND[1]

### A. Factual Background

Plaintiff is a resident of Philadelphia, Pennsylvania, who sought and obtained employment with Defendant as an usher at Moynihan Train Hall in Manhattan. (Compl. 2; *see also* Def. Br. 2). He is an African-American man (Compl., Ex. 1 ("EEOC Form"), at 2) who wears prescription eyeglasses for nearsightedness, and he considers himself "legally blind" on the basis that he cannot see if he "[does not] wear [his] glasses or [his] contacts" (PMC Tr. 5-6). Plaintiff worked for Defendant from April 1, 2024, until his termination on July 27, 2024. (EEOC Form 1-2).

---

[1] This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers certain exhibits attached to the Complaint ("Compl., Ex. [ ]" (Dkt. #1)), which exhibits are incorporated by reference therein. *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint). The Court also relies, as appropriate, on the declaration of Mina M. Wood in support of Defendant's motion to dismiss ("Wood Decl." (Dkt. #29)). It additionally deems Plaintiff's Complaint to have been amended to include those factual assertions (as distinguished from legal arguments) made by Plaintiff during the pre-motion conference held on November 20, 2025, the transcript of which is included as an exhibit to Ms. Wood's declaration ("Wood Decl., Ex. A" or "PMC Tr."). *See Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414, at *1 n.2 (S.D.N.Y. Feb. 5, 2018) ("Courts may also consider statements made in response to a defendant's request for a pre-motion conference and statements made during that conference.") (collecting cases); *accord Polardo* v. *Adelberg*, No. 22 Civ. 2533 (KMK), 2023 WL 2664612, at *1 n.2 (S.D.N.Y. Mar. 28, 2023) (collecting cases), *appeal dismissed sub nom. Poplardo* v. *Adelberg*, No. 23-604, 2023 WL 4504459 (2d Cir. June 8, 2023). The Court also relies on Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss. (Dkt. #31). *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #30); to Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #31); and to Defendant's reply memorandum of law as "Def. Reply" (Dkt. #32).

To substantiate his claims of employment discrimination, Plaintiff recounts a variety of interactions with colleagues and managers. Beginning with his disability-based allegations, Plaintiff reports an incident during his employment in which "several employees [said] negative things about" him. (EEOC Form 2). Specifically, one employee said that Plaintiff "could not see," and several employees told Plaintiff's manager that he "couldn't see well enough to perform [his] job" because he had apparently opened up the wrong side of a seating area for a train. (*Id.*). The manager then asked Plaintiff, in earshot of other employees, "whether [he] could see well enough to do [his] duties and whether [he] needed retraining." (Pl. Opp. 4).[2] While Plaintiff insisted that he had opened the correct side of the seating area, the manager "refused to look at the camera footage to see what actually happened," and instead "just took the word of the other employees." (EEOC Form 2).

Separately, Plaintiff alleges that certain interactions with management also demonstrate sex-, race-, and color-based discrimination. On one occasion in May 2024, two station managers explained to Plaintiff that someone wanted him to be terminated and warned him to "be very careful with the female employees." (EEOC Form 1). But when Plaintiff asked who had made allegations of unprofessional conduct, the managers declined to offer more details. (*Id.*). And the managers also declined Plaintiff's request that they open

---

2 Plaintiff also pleads, apparently referring to the same incident, that the manager said, "Do you know how to do your job, or do you need to be retrained?" (EEOC Form 2). The Court adopts the version of the quote in the body of this Opinion for purposes of its subsequent analysis because it is more favorable to Plaintiff's claim.

an investigation "to find out what was going on." (*Id.*). One day later, a job trainer and one of the same managers approached Plaintiff, and the trainer told Plaintiff that many employees were jealous of Plaintiff. (*Id.* at 1-2). The manager agreed by saying, "I can see that." (*Id.* at 2). These statements left Plaintiff confused, but he "let it go and completed [his] shift." (*Id.*).

On July 25, 2024, a station manager and acting superintendent came to Plaintiff's post and requested that they meet in the manager's office. (EEOC Form 2). In that meeting, the manager told Plaintiff that he was "doing a great job" and was a "keeper for Amtrak." (*Id.*). The manager complimented Plaintiff's customer service skills, congratulated him on his performance, and encouraged him to "[k]eep up the good work." (*Id.*).

On July 27, 2024, an employee told Plaintiff to wait upstairs for a different station manager, who arrived with two police officers and handed Plaintiff a termination letter. (EEOC Form 2). The station manager told Plaintiff that he was not a good fit for Amtrak and that "there were lots of customer complaints about [him]." (*Id.*).

Plaintiff contacted his union representative, who looked into the situation and informed Plaintiff that a female employee had made a complaint against him. (EEOC Form 2; PMC Tr. 13). At some point thereafter, one of Plaintiff's former coworkers called to check in on Plaintiff and in the same conversation "gave [him] the name of the female who actually made the complaint." (PMC Tr. 16). The complainant was "Latina" or "Hispanic," as was one of the managers who interacted with Plaintiff in the course of his termination. (*Id.*).

A business agent of the union later confirmed that there were "several complaints from multiple people and employees," none of which had been brought to Plaintiff's attention during the course of his employment. (*Id.* at 20-21).

## B. Procedural Background

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") sometime in August 2024 and received a Notice of Right to Sue from the EEOC on or about April 2, 2025. (Compl. 6).

Plaintiff initiated this action by filing his complaint on May 22, 2025. (Dkt. #1). On October 14, 2025, Defendant filed a pre-motion letter seeking leave to move to dismiss Plaintiff's claims. (Dkt. #15). The Court convened a pre-motion conference on November 20, 2025, at which it set a briefing schedule for Defendant's motion to dismiss. (November 20, 2025 Minute Entry; Dkt. #25). At that conference, both parties also agreed, with the Court's approval, that Plaintiff's factual representations at the conference would supplement his original pleadings. (PMC Tr. 24-25).

On January 9, 2026, Defendant filed its motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. #28). It also filed a memorandum of law in support thereof (Dkt. #30) and an affirmation from its counsel of record, Mina M. Wood (Dkt. #29). On January 20, 2026, Plaintiff filed his brief in opposition to Defendant's motion to dismiss. (Dkt. #31). On March 13, 2026, Defendant filed its reply brief. (Dkt. #32).

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Under Rule 12(b)(6)

Defendant seeks dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering such a motion, a court should "draw all reasonable inferences in [the p]laintiff's favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" (alteration in original) (quoting *Twombly*, 550 U.S. at 570)).

A court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'" (second alteration in original) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009))).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see generally United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

**2. *Pro Se* Litigants**

*Pro se* litigants are entitled to "special solicitude." *Ruotolo* v. *I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). Courts must construe a *pro se* litigant's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *Brownell* v. *Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Jorgensen* v. *Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). At the same time, courts "cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations or arguments that the submissions themselves do not 'suggest[.]'" *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation omitted) (first quoting *Phillips* v. *Girdich*, 408 F.3d 124, 127 (2d Cir. 2005); and then quoting *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). Nor should courts "excuse frivolous or vexatious filings by *pro se* litigants." *Iwachiw* v.

*N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005). "[*P*]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth* v. *Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

**B. Analysis**

The Court construes Plaintiff's Complaint to raise claims of sex-, race-, and color-based discrimination in violation of Title VII; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 301 (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-134 (the "NYCHRL");[3] as well as disability-based discrimination under the ADA, the NYSHRL, and the NYCHRL. The Court orders its analysis by statute.

**1. Title VII of the Civil Rights Act**

Discrimination claims under Title VII are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973). *See Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). To do so, the plaintiff must show that "[i] he belonged to a protected class; [ii] he was qualified for the position he held; [iii] he suffered an adverse employment action; and ... [iv] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown* v.

---

3 Under the NYCHRL, "[t]he term 'gender' includes actual or perceived sex[.]" N.Y.C. Admin. Code § 8-102.

*City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138). The burden of establishing a *prima facie* case is "minimal." *Lenzi* v. *Systemax, Inc.*, 944 F.3d 97, 113 (2d Cir. 2019).

At the motion to dismiss stage, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*[.]" *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). For employment discrimination claims under Title VII, "a plaintiff must plausibly allege that [i] the employer took adverse action against him and [ii] his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. A plaintiff may satisfy this standard by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87. In short, the complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. In this case, Plaintiff has plausibly pleaded that Defendant took adverse action against him, but not that this action was motivated by discriminatory intent.

#### a. Plaintiff Has Pleaded an Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (internal quotation marks and citation omitted). "Examples of

materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* Here, Defendant terminated Plaintiff's employment on July 27, 2024, and Plaintiff thus sustained an adverse employment action. (*See* EEOC Form 1-2).

**b. Plaintiff Has Failed to Plead That Any Protected Characteristic Was a Motivating Factor in His Termination**

While adequately pleading an adverse employment action in the form of his termination, Plaintiff has nonetheless failed to plead that his termination was motivated at least in part by Defendant's discriminatory intent. Under Title VII, a plaintiff need not prove (or plead) that "the causal link between injury and wrong is so close that the injury would not have occurred but for the act." *Lenzi*, 944 F.3d at 107 (quoting *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 343 (2013)). "So-called but-for causation is not the test." *Id.* (quoting *Nassar*, 570 U.S. at 343). Instead, a plaintiff need only plead facts that plausibly allege that "the motive to discriminate was *one of the employer's motives*, even if the employer also had other, lawful motives that were causative in the employer's decision." *Id.* (emphasis in original) (quoting *Nassar*, 570 U.S. at 343).

A plaintiff meets this burden by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. Plausible

allegations to this effect may arise from a range of circumstances, including "the employer's criticism of the plaintiff's performance in … degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Here, Plaintiff has failed to allege facts that directly or indirectly evidence discrimination based on race, color, or sex.

**i. Race and Color Discrimination**

Courts regularly aggregate race and color discrimination claims "when the same underlying facts support both." *Brooks* v. *Bright Horizons Fam. Sols., Inc.*, No. 24 Civ. 6076 (PAE), 2025 WL 1796995, at *5 n.3 (S.D.N.Y. June 26, 2025) (collecting cases), *aff'd in part, rev'd in part on other grounds*, No. 25-1830-cv, 2026 WL 1660493, at *3 (2d Cir. June 9, 2026) (summary order); *see also Batiste* v. *City Univ. of N.Y.*, No. 16 Civ. 3358 (VEC), 2017 WL 2912525, at *8 (S.D.N.Y. July 7, 2017). The Court thus analyzes these two claims together.

Plaintiff has not alleged facts sufficient to show race- or color-based discrimination either directly or indirectly "by giving rise to a plausible inference" thereof. *Vega*, 801 F.3d at 87. Instead, relying on broad stereotypes that he fails to connect to his legal claims, Plaintiff essentially alleges that his termination resulted, at least in part, from two Latino coworkers' collusion against him:

> [T]his might sound a little crazy … [b]ut … the female who actually made the complaint [against me] … is … a

> Latina worker, you know, Hispanic[.] … [A]nd the manager who … had terminated me is also, you know, a Latino. … [F]rom my experiences … of actually knowing … Latinos in general, they tend to stick together … no matter what it is. …
>
> I feel like I was … plotted against … by them … because … it makes no sense to actually pull me out of my job just to tell me how much of a great job I'm doing and … how I have a bright future with this company just to be fired two days later … without no type of reasoning … and just totally treated unfairly[.]

(PMC Tr. 16-17).

Plaintiff apparently believes that Defendant fired him because his Latina coworker lodged a complaint, and his manager then took the coworker's side because of their shared ethnicity. But Plaintiff fails to explain how these allegations show that his race or color was among Defendant's motives in terminating him. Plaintiff does not allege that either his manager or his coworker made any comments to him about his race or color — or, for that matter, that the two discussed his race or color at all. (PMC Tr. 19). Rather, the only support for Plaintiff's racial discrimination theory is the notion that "Latinos in general … tend to stick together … no matter what." (*Id.* at 16). That generalization is not "nonconclusory factual matter," and it certainly does not "nudge [Plaintiff's] claims across the line from conceivable to plausible[.]" *E.E.O.C.* v. *Port Auth. of N.Y. and N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations adopted) (internal quotations marks and citation omitted). It is wholly speculative and precisely the kind of subjective belief that courts in this Circuit have found insufficient to state a claim. *See Farmer* v. *Shake Shack Enter.*, 473 F. Supp. 3d 309, 328 (S.D.N.Y. 2020) (holding that a plaintiff's

"subjective belief that her firing was motivated by her race is legally irrelevant."). Accordingly, the Court concludes that Plaintiff has failed to state a claim for race- or color-based discrimination under Title VII.

**ii. Sex Discrimination**

Plaintiff fails to state a sex discrimination claim for similar reasons. Plaintiff alleges that, upon receiving the complaint that resulted in his termination, Defendant "basically took the word of a woman ... without even giving [him] any kind of proper investigation." (PMC Tr. 14). Plaintiff believes that the reason he did not have the chance to respond to the complaint before being terminated was his sex. (*Id.* at 15).

The Second Circuit has explained that dismissal under Rule 12(b)(6) is proper where "[t]he gist of [plaintiff's] sex discrimination claim is that th[e] decision to terminate [his] employment without even talking to him about the allegations was based on sex stereotyping that men accused of sexual harassment are likely guilty of it." *Bockus* v. *Maple Pro, Inc.*, 850 F. App'x 48, 51 (2d Cir. 2021) (summary order). Plaintiff's allegations closely mirror those in *Bockus*, where the plaintiff was terminated from his job of nearly 13 years after complaints of coworker harassment without an opportunity to respond to the complaints. *Id.* Without more — such as claims that Defendant "ever said or did anything that suggested ... that [it] treated men less favorably as a group, or otherwise operated on the basis of sex stereotyping" — Plaintiff's pleadings constitute "threadbare allegations" that cannot sustain the "minimal burden" required to raise an inference of discriminatory intent. *Id.*

### 2. The Americans with Disabilities Act

Plaintiff's discrimination claims under the ADA are similarly analyzed under the burden-shifting framework of *McDonnell Douglas Corp.* *See Sista* v. *CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). To successfully state a *prima facie* case of disability discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that "[i] his employer is subject to the ADA; [ii] he was disabled within the meaning of the ADA; [iii] he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and [iv] he suffered adverse employment action because of his disability." *Id.* (quoting *Giordano* v. *City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)). At the pleading stage, the plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Anderson* v. *City of New York*, 712 F. Supp. 3d 412, 432 (S.D.N.Y. 2024) (internal quotation marks omitted) (quoting *Langella* v. *Mahopac Cent. Sch. Dist.*, No. 18 Civ. 10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023)).

#### a. Plaintiff Has Not Alleged a Disability Within the Meaning of the ADA

Under the ADA, the term "disability" means, as relevant here, that an individual (i) has "a physical or mental impairment that substantially limits one or more major life activities" or (ii) is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(A), (C). Plaintiff has failed to allege that he is disabled under either definition.

Starting with Section 12102(1)(A), while "[t]he determination of whether an impairment substantially limits a major life activity" is generally made "without regard to the ameliorative effects of mitigating measures," there is an exception in the case of "ordinary eyeglasses or contact lenses," which "shall be considered in determining whether an impairment substantially limits a major life activity." 42 U.S.C. § 12102(4)(E)(i), (ii). Plaintiff wears eyeglasses and contact lenses for nearsightedness. (PMC Tr. 5-6). He considers himself "legally blind" because he cannot see without them (*id.* at 6) and because he has "been told [that he is legally blind] by a doctor since [he] was a child" (Pl. Opp. 4). But Plaintiff does not deny that the use of eyeglasses or contacts is sufficient to correct his vision — indeed, he maintains that he was able to perform his duties during the period of his employment. (PMC Tr. 6). This Court must therefore consider the substantial "ameliorative effects" that Plaintiff himself explains his glasses and contacts provide, and find, as courts around the country have, that Plaintiff's nearsightedness does not substantially limit a major life activity under Section 12102(1)(A). *See, e.g.*, *Grose* v. *Mnuchin*, No. 18-5746, 2019 WL 7603383, at *5 (6th Cir. Sept. 27, 2019) (holding that plaintiff was not disabled within the meaning of the ADA where his "optometrists opined that his vision impairments could be corrected with bifocal eyeglasses").

Plaintiff also fails to establish that he was "regarded as having" a visual impairment within the meaning of Section 12102(1)(C). "A person is 'regarded as' disabled if he 'establishes that he … has been subjected to an action

prohibited [by the ADA or the Rehabilitation Act] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Daly* v. *Westchester Cnty. Bd. of Legislators*, No. 23-1220-cv, 2024 WL 3264125, at *1 (2d Cir. July 2, 2024) (summary order) (quoting 42 U.S.C. § 12102(3)(A)). And unlike under Section 12102(1)(A), Plaintiff's nearsightedness, even though evidently corrected, does not by itself exclude him from stating a claim under the "regarded as" prong of the ADA. *See* 42 U.S.C. § 12102(4)(E)(ii) (creating an exception whereby "[t]he ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining *whether an impairment substantially limits a major life activity*" (emphasis added)); *cf.* 29 C.F.R. § 1630.10(b) app. (explaining that "[s]omeone who wears eyeglasses or contact lenses to correct vision will still have an impairment" within the meaning of the "regarded as" prong). Thus, to qualify as disabled under Section 12102(1)(C), Plaintiff must show (i) that he was subjected to an action prohibited by the ADA (ii) because of (iii) what the ultimate decisionmaker who terminated him perceived as a vision impairment. 42 U.S.C. § 12102(1)(C); *Daly*, 2024 WL 3264125, at *2; *Sacks* v. *Gandhi Engineering, Inc.*, 999 F. Supp. 2d 629, 648 (S.D.N.Y. 2014) (determining whether defendant perceived plaintiff to have impairment, whether defendant "further believed that this impairment prevented [p]laintiff from performing key components of his job," and whether "[p]laintiff's employment was terminated, at least in part, for that reason").

As it happens, Plaintiff fails to plead allegations supporting a plausible inference in support of the second and third requirements. Plaintiff alleges that his manager, following similar comments by employees, asked him if he "could see well enough to do [his] duties and whether [he] needed retraining," and that his coworker "overheard multiple coworkers mocking and making fun of [his] legal blindness." (Pl. Opp. 4-5). But as explored in greater detail in the following section, "[m]erely because an employee or employees at some point mocked or dismissed [a plaintiff's] disabilities does not mean that any later adverse actions taken against [him] by [an employer] were *because of* [his] disability." *Graham* v. *Macy's, Inc.*, No. 14 Civ. 3192 (PAE), 2016 WL 354897, at *7 (S.D.N.Y. Jan. 28, 2016). Moreover, these isolated statements by fellow employees and one manager do not demonstrate that "'the ultimate hiring authorities,'" *i.e.*, "the supervisor who terminated him, regarded him as disabled." *Daly*, 2024 WL 3264125, at *2 (quoting *E.E.O.C.* v. *J.B. Hunt Transp., Inc.*, 321 F.3d 69, 76 (2d Cir. 2003)). After all, "[s]tray comments are not evidence of discrimination if … they are made by individuals without decision-making authority." *Graham*, 2016 WL 354897, at *7 (quoting *Inguanzo* v. *Hous. & Servs., Inc.*, No. 12 Civ. 8212 (ER), 2014 WL 4678254, at *16 (S.D.N.Y. Sept. 19, 2014), *aff'd*, 621 F. App'x 91 (2d Cir. 2015) (summary order)).

Plaintiff's pleadings are bereft of allegations supporting anything beyond a speculative inference that the coworker who suggested that Plaintiff "could not see" (EEOC Form 2) or the coworkers who "mock[ed] and ma[de] fun of [his]

legal blindness" (Pl. Opp. 5) had any decision-making authority or otherwise influenced the decision to terminate him. (*See generally* Compl.; EEOC Form; PMC Tr.; Pl. Opp.). Nor does Plaintiff suggest, beyond vague speculation rooted in his "never [being] told about having poor performance or any complaints prior to his termination," that the manager who made the comment about his eyesight played a role in his termination. (Pl. Opp. 2). Rather, the only plausible inference that Plaintiff's pleadings support is that the employee who submitted a complaint against him was the reason for his termination. (*See* PMC Tr. 16). Plaintiff knows this complainant's identity (*id.*), but, fatal to his disability discrimination claims, he does not indicate that she was involved in any of the incidents relating to negative comments about his impaired vision (*see* Pl. Opp. 5).

Put differently, Plaintiff's pleadings detail an adverse employment action — namely, termination by Defendant — but fail to connect the action to the single comment a manager made and stray comments other employees made about Plaintiff's eyesight. He cannot therefore be "regarded as" having an impairment within the meaning of the ADA. Even if he were, his claim fails to support an inference of discriminatory motivation, as discussed below.

**b. Even If Plaintiff Had Alleged a Disability Within the Meaning of the ADA, He Fails to Allege Facts Supporting an Inference of Discriminatory Motivation**

Plaintiff fails to allege facts that "give plausible support to a minimal inference of discriminatory motivation." *Anderson*, 712 F. Supp. 3d at 432 (internal quotation marks omitted) (quoting *Langella*, 2023 WL 2529780, at *3).

As described above, Plaintiff recounts hearing that certain employees "mock[ed] and ma[de] fun of" his vision behind his back. (Pl. Opp. 5). He also recounts an incident in which a coworker, erroneously believing Plaintiff had opened the wrong side of a seating area, said that Plaintiff "could not see" (EEOC Form 2), and in which a manager "directly questioned [his] ability to perform [his] job by asking whether [he] could see well enough to do [his] duties and whether [he] needed retraining" (Pl. Opp. 4). Defendant, for its part, argues that the manager's comment cuts against Plaintiff because it "expressly suggest[s] that she was seeking to support Plaintiff in performing his job." (Def. Br. 12). But even rejecting Defendant's interpretation and drawing all reasonable inferences in Plaintiff's favor, he does not plausibly connect the manager's remark, or the employees' remarks, to his termination. He fails to mention this particular manager in connection with any other incident recounted in the Complaint, including his receipt of notice of his termination and his discovery of the purportedly significant complaint made against him by a coworker. (*See generally* EEOC Form; PMC Tr.). There is simply no indication that this station manager's comment about Plaintiff, or the comments of other coworkers, "even if concerning," "played a role in [Defendant's] decision-making." *Wright* v. *City of New York*, No. 23 Civ. 3149 (KPF), 2024 WL 3952722, at *7 (S.D.N.Y. Aug. 27, 2024). Because "even *pro se* pleadings must contain factual allegations that 'raise a right to relief above the speculative level,'" *Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414, at *3 (S.D.N.Y. Feb. 5, 2018) (quoting

*Dawkins* v. *Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009)), Plaintiff fails to state a claim under the ADA.

### 3. The Court Dismisses Plaintiff's New York State Human Rights Law and New York City Human Rights Law Claims

Finally, the Court construes Plaintiff's submissions to raise discrimination claims under the NYSHRL and the NYCHRL. *See McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (requiring courts to construe *pro se* plaintiffs' pleadings to allege analogous state and local law claims, even if the plaintiff does not specifically assert such claims). As a general matter, where federal claims are dismissed before trial, "the state claims should be dismissed as well." *First Cap. Asset Mgmt., Inc.* v. *Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano* v. *Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)). "The Second Circuit takes a particularly strong view that district courts should decline to exercise supplemental jurisdiction in the absence of a 'clearly articulated federal interest.'" *Cummings* v. *City of New York*, No. 19 Civ. 7723 (CM) (OTW), 2021 WL 1664421, at *2 (S.D.N.Y. Apr. 28, 2021) (quoting *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006)); *see* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction[.]"); *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

This case presents an exception to that general precept. In fact, the Court has jurisdiction over Plaintiff's NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1349, which provides: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock." Here, because Defendant Amtrak was created by the Rail Passenger Services Act of 1970, 49 U.S.C. § 24101, and the United States owns more than one-half of Defendant's stock (*see* Dkt. #17 (corporate disclosure statement reporting that the United States holds "100% of Amtrak's preferred stock")), the Court has jurisdiction over Plaintiff's state and city claims, *see Martin* v. *Nat'l R.R. Corp.*, No. 18 Civ. 9688 (ALC), 2019 WL 11794000, at *1 (S.D.N.Y. Oct. 31, 2019) (exercising jurisdiction over Amtrak pursuant to Section 1349 for precisely this reason); *Nat'l R.R. Passenger Corp.* v. *Neubig*, No. 15 Civ. 1142 (JAM), 2015 WL 13016005, at *1 (D. Conn. Sept. 25, 2015) (similar).

Exercising this jurisdiction, the Court determines that Plaintiff fails to state a claim for disability, sex, race, or color discrimination under either the NYSHRL or the NYCHRL. The NYSHRL makes it "an unlawful discriminatory practice ... [f]or an employer ... because of an individual's ... race, ... color, ... gender identity or expression, ... sex, [or] disability ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The NYCHRL similarly makes it unlawful for "an employer or

an employee or agent thereof, because of the actual or perceived … race, … color, … gender, [or] disability … of any person," to discriminate "in … terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). "The NYCHRL must be liberally construed," *Mitchell* v. *Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 104 (S.D.N.Y. 2024) (collecting cases), and in 2019 the NYSHRL was amended to align it with the NYCHRL's more liberal pleading standard, *Kulick* v. *Gordon Property Group, LLC*, No. 23 Civ. 9928 (KPF), 2026 WL 2453598, at *12 (S.D.N.Y. Aug. 21, 2026) (collecting cases). The Court therefore analyzes Plaintiff's NYSHRL and NYCHRL claims coextensively. *See id.*

The pleading requirements of these claims differ in significant ways from Plaintiff's now-dismissed federal claims. To state a viable discrimination claim under the NYCHRL and the post-amendment NYSHRL, Plaintiff need not allege that he suffered a materially adverse employment action or that "discriminatory animus was the but-for cause or even the primary motivation of his alleged mistreatment." *Delo* v. *Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183 (S.D.N.Y. 2023); *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013) ("[T]he NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct."). Rather, Plaintiff must show only that he was "treated less well at least in part because of [his protected characteristics]." *Delo*, 685 F. Supp. 3d at 183 (internal quotation marks omitted) (quoting *Mihalik*, 715 F.3d at 110). In other words, "to state a claim for discrimination under the NYCHRL, a plaintiff must only

show differential treatment of any degree based on a discriminatory motive." *Nezaj* v. *PS450 Bar and Rest.*, 719 F. Supp. 3d 318, 330 (S.D.N.Y. 2024) (alterations adopted) (quoting *Gorokhovsky* v. *N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order)). "Still, the liberal standards of the NYCHRL do not go so far as to establish a 'general civility code,'" *id.* at 331 (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 (1st Dep't 2009), and thus the alleged discriminatory treatment must be "more than trivial, insubstantial, or petty," *Torre* v. *Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quoting *Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015)).

Further, as a corporation, Defendant "can be liable only under a theory of vicarious liability." *Kulick*, 2026 WL 2453598, at *14. Under the NYSHRL, Defendant would be vicariously liable if it "became a party to [to an employee's discriminatory acts] by encouraging, condoning, or approving [them]." *Brown* v. *City of New York*, No. 11 Civ. 2915 (PAE), 2013 WL 3789091, at *18 (S.D.N.Y. July 19, 2013) (internal quotation marks and citation omitted); *see also Murtha* v. *N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *17 (S.D.N.Y. Sept. 17, 2019); *Doe* v. *Bloomberg, L.P.*, 36 N.Y.3d 450, 455 (2021). Under the NYCHRL, by contrast, Defendant would be vicariously liable if (i) "[t]he employee or agent exercised managerial or supervisory responsibility," (ii) "[t]he employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action," or (iii) "[t]he employer should

have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." N.Y.C. Admin. Code § 8-107(13)(b); *see also Zakrzewska* v. *New Sch.*, 14 N.Y.3d 469, 479 (2010); *Brown*, 2013 WL 3789091, at *18 ("The NYCHRL imposes liability on the employer in three instances.").

With these principles in mind, the Court turns first to Plaintiff's sex, race, and color claims and holds that they fail for substantially the same reasons discussed above — namely, that the allegations supporting these claims are impermissibly speculative. Plaintiff's race and color discrimination theories rely entirely on the stereotype that "Latinos in general … tend to stick together … no matter what." (PMC Tr. 16). Similarly, his sex-discrimination theory turns on the suspicion that Defendant "basically took the word of a woman … without even giving [him] any kind of proper investigation." (*Id.* at 14). As the Court has already established, these allegations are purely speculative and do not do enough to "nudge[ ] [Plaintiff's] claims across the line from conceivable to plausible," even under the more liberal standards of the NYSHRL and the NYCHRL. *Twombly*, 550 U.S. at 570.

Plaintiff's disability-based claims, however, require a lengthier analysis. The allegations underpinning these claims are that Plaintiff's manager, following similar comments by employees, asked him if he "could see well enough to do [his] duties and whether [he] needed retraining," and that his coworker "overheard multiple coworkers mocking and making fun of [his] legal blindness." (Pl. Opp. 4-5). Taking the latter allegation first — that Plaintiff's

coworkers mocked his eyesight — the Court determines that this alleged mocking plausibly constitutes "differential treatment of any degree based on a discriminatory motive." *Nezaj*, 719 F. Supp. 3d at 330. The next question, then, is whether Defendant can be vicariously liable for its employees' mocking. But nowhere across his complaint, his assertions at the pre-motion conference, or his briefing does Plaintiff plead anything permitting the Court to reasonably draw an inference that Defendant encouraged, condoned, or approved this mocking. *See Brown*, 2013 WL 3789091, at *18. The Court could impute the coworkers' mocking to Defendant if Plaintiff had pleaded that "upper-level supervisors had knowledge of the conduct and ignored it," *Vitale* v. *Rosina Food Prods.*, 727 N.Y.S.2d 215, 218 (4th Dep't 2001) (internal quotation marks and citation omitted), but Plaintiff pleads only that another coworker overheard it (Pl. Opp. 5). Plaintiff has thus failed to plausibly allege a NYSHRL disability discrimination claim premised on his coworkers' mocking his eyesight.

There is no NYCHRL claim predicated on the coworkers' mocking commentary either. Plaintiff does not allege that these coworkers exercised managerial or supervisory responsibility over him. *See* N.Y.C. Admin. Code § 8-107(13)(b)(1). He offers no allegations from which the Court could infer that Defendant knew of the mocking commentary, or that the coworker who overheard it was a manager or supervisor. *See id.* § 8-107(13)(b)(2) ("[A]n employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility."). Nor do

Plaintiff's pleadings plausibly suggest that Defendant should have known of the mocking commentary. *See id.* § 8-107(13)(b)(3). After all, it is difficult to expect an employer to monitor all conversations its employees have on the job. *See Nezaj*, 719 F. Supp. 3d at 331 (explaining that the NYCHRL is not a "general civility code" (internal quotation marks and citation omitted)). As a result, the coworkers' mocking commentary does not suffice to state a claim for disability discrimination under the NYCHRL.

That leaves the first allegation of disability discrimination — that Plaintiff's manager, following similar comments by employees, asked him if he "could see well enough to do [his] duties and whether [he] needed retraining." (Pl. Opp. 4). The Court need not conduct a vicarious liability analysis, though, because this allegation fails at an earlier step: it does not rise to the level of differential treatment based on discriminatory motive, but rather is at worst a petty slight. *See Torre*, 493 F. Supp. 3d at 285. Indeed, courts in this Circuit have held that far more offensive language constitutes nothing more than petty slights. *See, e.g.*, *Livingston* v. *City of New York*, 563 F. Supp. 3d 201, 223, 233-35, 255 (S.D.N.Y. 2021) (finding repeated comments from supervisors that an employee's observing of the Sabbath was "unacceptable" and that he "can't be missing Saturdays" "amounts at most to petty slights" under the NYCHRL (internal quotation marks and citation omitted)); *Rozenfeld* v. *Dep't of Design & Constr. of N.Y.C.*, 875 F. Supp. 2d 189, 209 (E.D.N.Y. 2012) (acknowledging "the lack of tact and inappropriateness of calling Plaintiff part of a 'mental retard case,'" but finding that Plaintiff alleged "nothing more than, at most,

petty slights or trivial inconveniences" in support of his NYCHRL hostile work environment claim), *aff'd*, 522 F. App'x 46 (2d Cir. 2013) (summary order); *Rogers* v. *Bank of N.Y. Mellon*, No. 09 Civ. 8551 (HBP), 2016 WL 4362204, at *19 (S.D.N.Y. Aug. 15, 2016) ("[E]ven under the NYCHRL, plaintiff's claim that she was once called a 'crazy black bitch' ... does not constitute anything more than a petty slight."); *Cruz* v. *Bernstein Litowitz Berger & Grossman LLP*, No. 20 Civ. 8596 (VF), 2023 WL 2691456, at *17 (S.D.N.Y. Mar. 29, 2023) (collecting cases). This Court will not depart from that line of cases here. Accordingly, the Court holds that the manager's retraining comment, and similar comments by other employees, do not support a claim under either the NYSHRL or the NYCHRL, and thus the Court concludes that Plaintiff has failed to plausibly plead a claim for discrimination under any of those statutes.

**4. The Court Declines to Grant Leave to Amend**

The Court will not permit Plaintiff to amend his claims. To be sure, the Second Circuit has held that leave to replead should be liberally granted to *pro se* litigants. *See Grullon* v. *City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once[.]"); *see also Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). But the Court has already permitted Plaintiff to amend his Complaint twice — once to include his factual assertions made during the pre-motion conference and again to include those made in his brief in opposition to Defendant's motion to dismiss. Plaintiff has not requested leave to amend a third time, nor does the Court believe it would be fruitful to

grant such a request. *See McKie* v. *Kornegay*, No. 21-1943, 2022 WL 4241355, at *3 (2d Cir. Sept. 15, 2022) (summary order) ("[A]mendment should be denied where the complaint gives no 'indication that a valid claim might be stated.'" (quoting *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))). Accordingly, the Court declines to grant Plaintiff leave to amend his claims.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff at his address of record.

SO ORDERED.

Dated: October 8, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge